**O**

# United States District Court
# Central District of California

VERONICA GARCIA, an Individual,

Plaintiff,

v.

CONSOLIDATED DISPOSAL SERVICES, L.L.C., a Delaware LLC; CORY LEWIS, an Individual; and Does 1–25, Inclusive

Defendants.

Case No. 2:18-cv-0417-ODW (JPR)

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [18] AND GRANTING DEFENDANT CORY LEWIS'S MOTION TO DISMISS [14]**

## I.   INTRODUCTION

Plaintiff Veronica Garcia ("Garcia") brought this action in Los Angeles County Superior Court against Defendants Consolidated Disposal Services, LLC ("Consolidated") and Cory Lewis ("Lewis") (collectively, "Defendants"), alleging various employment and termination related state law claims. (Compl., ECF No. 1-1.) Defendants removed the case to this Court, arguing that there is no legitimate basis for the joinder of Lewis, the only California Defendant. (Notice of Removal ("Not. Removal") ¶¶ 17–27, ECF No. 1.) Additionally, Lewis moved to dismiss Garcia's claims against him for intentional infliction of emotional distress ("IIED") and

negligent infliction of emotional distress ("NIED").  (Mot. Dismiss, ECF No. 14.) Garcia opposes Lewis's Motion and moves to remand the case, arguing that complete diversity under 28 U.S.C. § 1332 does not exist because Lewis was not fraudulently joined.  (Garcia Opp'n Mot. Dismiss, ECF No. 20; Mot. Remand, ECF No. 18.)

For the reasons discussed below, the Court finds that Garcia's claims against Lewis fail as a matter of law.  Therefore, the Court **DENIES** Garcia's Motion to Remand (ECF No. 18) and **GRANTS** Defendants' Motion to Dismiss Garcia's claims against Lewis (ECF No. 14).[1]

## II.   BACKGROUND

### A.   Factual Background

Garcia's claims arise from the termination of her employment with Consolidated.  (*See generally* Compl.)  On November 22, 2017, Garcia filed this action in state court, asserting eleven causes of action.  (Compl. at 1.)  Two of these claims, IIED, and NIED, are against Lewis, Garcia's former manager at Consolidated. (*Id.* ¶¶ 24–30.)   Garcia is a citizen of California; Consolidated is a Delaware corporation, with its principal place of business in Phoenix, Arizona; and Lewis is a citizen of California.  (*Id.* ¶¶ 1, 3, 13–16.)

In August 2007, Garcia began working for Consolidated as a Customer Resource Representative.  (*Id.* ¶ 8.)  Garcia alleges she was a diligent employee during her time at Consolidated.  (*Id.*)  She claims that her yearly performance evaluations were positive, and that she won numerous awards for her job performance.  (*Id.*)  In 2015, Consolidated notified Garcia that it was merging with another call center and she might be laid off.  (*Id.* ¶ 9.)  Allegedly, Consolidated "promised that she would be provided with 16-week's severance if she was laid off, amounting to approximately $11,180.80, plus an additional lump sum for health benefits."  (*Id.*)  In the months following, Consolidated implemented stricter productivity standards, forcing Garcia to regularly work off-the-clock.  (*Id.* ¶ 10.)

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

In February 2017, Garcia's manager, Lewis, called Garcia into his office to discuss customer service phone calls that she had missed. (*Id.* ¶ 11.) Garcia informed Lewis that the missed phone calls were a result of the company's aggressive productivity standards. (*Id.*) Lewis indicated that other employees, himself included, also missed phone calls and advised Garcia that "he did not know what Human Resources would do in this situation." (*Id.*) Later that week, Garcia heard from other employees that she was going to be fired, and she reached out to Lewis for confirmation. (*Id.* ¶ 12.) In response, Lewis called Garcia into his office and requested that she draft a resignation letter. (*Id.* ¶ 13.) He allegedly told Garcia "it was best for her to resign so that it would look better to future employers and that [Consolidated] would not have to explain the purported reasons for [Garcia's] termination to future prospective employers seeking a reference." (*Id.* ¶ 13.). Garcia claims that she asked for time to think about the decision, but that Lewis made her feel like she could not leave his office—insisting that she resign immediately. (*Id.*)

Ultimately, Garcia drafted the resignation letter in Lewis's office. (*Id.*) "The letter states …that she was 'pushed to resign,' [] she disagreed with the way that [Consolidated] was treating her[,] and that she felt 'humiliated.'" (*Id.*) Garcia claims that Defendants' reason for firing her were pretextual and that the real reason for pressuring her to "voluntarily resign" was to deny her the severance pay she was promised. (*Id.* ¶ 14.) According to Garcia, Defendants' high productivity standards and "unfair treatment" caused her to suffer extreme humiliation, depression, anxiety, and mental distress. (*See id.* ¶¶ 17, 26, 30.)

**B.    Procedural History**

On November 22, 2017, Garcia filed this action in state court (*See id.*) Defendants removed the action on January 18, 2018, claiming diversity jurisdiction under 28 U.S.C. § 1332. (Not. Removal ¶ 1.) On February 16, 2018, Garcia moved to remand. (*See* Mot. Remand.) Defendants timely opposed and filed a motion to

dismiss both claims against Lewis.  (Defendants' Opp'n Mot. Remand, ECF No. 21; Mot. Dismiss.)  These Motions are now before the Court for decision.

### III.    LEGAL STANDARDS

#### A.    Removal

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress.  *See* U.S. Const. art.  III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit.  28 U.S.C. § 1441(a).  Federal courts have original jurisdiction where an action presents a federal question under 28 U.S.C. § 1331, or diversity of citizenship under 28 U.S.C. § 1332.  To exercise diversity jurisdiction, a federal court must find complete diversity of citizenship among the adverse parties and the amount in controversy must exceed $75,000, usually exclusive of interest and costs.  28 U.S.C. § 1332(a).

Courts strictly construe the removal statute against removal jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988)).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus*, 980 F.2d at 566.  The party seeking removal bears the burden of establishing federal jurisdiction.  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (citing *Gaus*, 980 F.2d at 566).

#### B.    Fraudulent Joinder

Removal based on a court's diversity jurisdiction is proper, despite the presence of a non-diverse defendant, where that defendant is fraudulently joined—also known as a sham defendant.  *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  Defendants claiming fraudulent joinder must "have the opportunity prove that individuals joined in the action cannot be liable on any theory."  *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  "If the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious

4

according to the settled rules of the state," the joinder is considered fraudulent, and the party's citizenship is disregarded for purposes of diversity jurisdiction. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

However, "[i]f there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the court must remand." *Hamilton Materials*, 494 F.3d at 1206; *see also Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998) ("The defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant."). Given this standard, "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that a plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

### C.    Dismissal for Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering a motion to dismiss for failure to state a claim, "the court must accept as true all factual allegations in the complaint, as well as all reasonable inferences that may be drawn from such allegations." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n. 2 (9th Cit. 2000). All such allegations are to be construed in the light most favorable to the nonmoving party. *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). "In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions." *World Chess Museum, Inc. v. World Chess Fed'n, Inc.*, No. 2:13-cv-00345-RCJ-GWF, 2013 WL 5663091, at *1 (D. Nev. Oct. 15, 2013).

## IV.   DISCUSSION

Defendants contend that Garcia fraudulently joined Lewis to destroy diversity jurisdiction and that her claims against Lewis fail as a matter of law.  (Not. Removal ¶¶ 17–27.)  For these reasons, Defendants request that this Court deny Garcia' Motion to Remand and grant their Motion for Dismiss Garcia's IIED and NIED claims against Lewis.  (*See* Defendants' Opp'n Mot. Remand; Mot. Dismiss.)   The Court will address each Motion in turn.

### A.   Garcia's Motion to Remand

When assessing fraudulent joinder, a court may pierce the pleadings to determine whether a plaintiff has a plausible claim against the non-diverse defendant. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir 2001).  Here, even upon reviewing the facts in the light most favorable to Garcia, the Court finds that Garcia does not have legitimate claims against Lewis.  *See Good*, 5 F. Supp. 2d at 807.

### 1.   IIED Claim

Under a theory of IIED, a plaintiff must prove: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1988).  Further, the conduct of the defendant must be "so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Id.*

#### i.   *California Workers' Compensation Act*

The Court first addresses whether Garcia's IIED claim against Lewis is barred by the California Workers' Compensation Act ("WCA").  "The WCA provides the exclusive means of remedy for employee's injuries 'arising out of and in the course of … employment.'" *Vanderhule v. Amerisource Bergen Drug Corp.*, No. SACV 16-2104 JVS (JCGx), 2017 WL 168911, at *3 (C.D. Cal. Jan. 17, 2017) (quoting Cal.

Labor Code § 3600(a)). Under the WCA, "employees are entitled to compensation for injuries caused by their employment only in proceedings before the Worker's Compensation Appeals Board." *Corona v. Quad Graphics Printing Corp.*, 218 F. Supp. 3d 1068, 1072 (C.D. Cal. 2016). In "exceptional circumstances," an employee may bring a separate civil action when an employer's conduct falls outside the normal risk of employment, also known as the "compensation bargain." *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 811–12 (2001). "There is no bright line test in determining what behavior is part of the employment relationship or reasonably encompassed within the compensation bargain. Nevertheless, district courts must resolve ambiguities in the controlling state law in favor of the non-removing party when evaluating fraudulent joinder." *Onelum*, 948 F. Supp. 2d at 1055 (quoting *Calero v. Unisys Corp.*, 271 F.Supp.2d 1172, 1181 (N.D. Cal. 2003)).

"Generally, claims for emotional distress caused by the employer's conduct, causing distress such as 'discharge, demotion, discipline or criticism' are preempted by the WCA." *Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1054 (C.D. Cal. 2013) (quoting *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1099 (1992)). "Such distress, whether intentional or negligent conduct on the part of the employer, is considered 'part of the normal risk of employment' and hence subject to the exclusive remedies of the workers' compensation laws." *Onelum*, 948 F. Supp. 2d at 1054 (quoting *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 814–15 (2001)). Indeed, the WPA generally preempts an employee's IIED claim unless it "exceed[s] the normal risks of the employment." *Corona*, 218 F. Supp. 3d at 1073 (quoting *Fretland v. County of Humboldt*, 69 Cal. App. 4th 1478, 1492 (1999). The phrase "normal part of the employment relationship," however, does not encompass all conduct that occurs on the job. *Onelum*, 948 F. Supp. 2d at 1054 (quoting *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987)). "To be within the scope of employment, the incident must be inherent in the workplace, or

typical of or broadly incidental to the employer's enterprise." *Torres v. Parkhouse Tire Serv., Inc.*, 26 Cal. 4th 995, 1008 (2001).

"Liability for [IIED] 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Light v. Cal. Dept. of Parks and Recreation*, 14 Cal. App. 5th 75, 101 (Ct. App. 2017) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009)). A retaliatory motive alone is insufficient to sustain a claim for IIED. *Light*, 14 Cal. App. 5th at 101. Even "misconduct" that "may be characterized as intentional, unfair, or outrageous" may constitute a "normal part of the working relationship" and not lie outside the proper scope of the WCA. *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 752 (1992).

> "In sum, where the employee suffers annoyance or upset on account of the employer's conduct but is not disabled, does not require medical care, and the employer's conduct neither contravenes fundamental public policy nor exceeds the inherent risks of the employment, the injury will simply not have resulted in any occupational impairment compensable under the workers' compensation law or remediable by way of a civil action."

*Id.* However, courts have found that IIED claims are not preempted by the WCA when they involve separate discrimination claims based on an employee's physical disability, race, or sexual orientation. *See Vanderhule.*, JVS (JCGx), 2017 WL 168911, at *4 (citing cases).

Here, Garcia's claims for emotional distress are not based on discrimination, harassment, or retaliation. (*See* Compl. ¶¶ 6–17, 24–30.) Without allegations of such conduct, Lewis's actions fall squarely within the exclusivity provision of the WCA because, as discussed in depth below, they consist of personnel management decisions performed in the normal course of employment.

Garcia points to several cases to argue that Lewis's actions are outside the normal course of employment; however, each case proffered is inapplicable because it either deals with corporate liability, or contains allegations of discrimination, harassment, or retaliation. (*See* Mot. Remand 11–14). In reviewing these cases,

Garcia's allegations fall short of the same discriminatory, harassing, or retaliatory behavior that courts require to bring an individual supervisor's conduct outside the normal course of employment.  For example, Garcia cites to *Livitsanos* to argue that her emotional distress claim should not be preempted by the WCA because Lewis's conduct "contravenes fundamental public policy."  2 Cal. 4th at 754; (*see* Mot. Remand 17.)    However, this exception has since been clarified by the California Supreme Court.  *See Thomas v. Starz Entm't LLC*, No. 2:15-cv-09239-CAS (MRWx), 2016 WL 844799, at *8 (C.D. Cal. Feb. 29, 2016) (citing *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 902–03 (2008).    The California Supreme Court explained that this exception "was merely intended to permit the filing of an action for wrongful discharge in violation of public policy, notwithstanding the provisions of the Worker's Compensation Act."  *Id.*    Therefore, the "fundamental public policy" exception has been limited to wrongful discharge actions and does not apply in this case.  *See Smith v. Lowe's Hiw, Inc.*, No. 2:13-CV-1713 WBS AC, 2014 WL 1419655, at *6 (E.D. Cal. Apr. 14, 2014) ("[T]he exception for conduct that 'contravenes fundamental public policy' simply means that a wrongful termination claim is not preempted by the worker's compensation exclusive remedy rule (but the intentional infliction of emotional distress claim is)."  Therefore, Lewis may not be held personally liable because Garcia's IIED cause of action is barred by the exclusivity provision of the WCA.

ii.  *Extreme and Outrageous Conduct*

Even if Garcia's allegations were not preempted by the WCA, she must still plead a prima facie IIED claim to demonstrate that the cause of action against Lewis is non-fanciful.  *See Hamilton Materials*, 494 F.3d at 1206.    Defendants argue that Garcia's allegations fall short of the extreme and outrageous standards required to support an IIED claim because Garcia's claims are based on Lewis's non-actionable personnel decisions. (Defendants' Opp'n Mot. Remand 3–5.)  The Court agrees.

9

"Managing personnel is not outrageous conduct beyond the bounds of human decency." *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996). "A simple pleading of personnel management activity is insufficient to support a claim of [IIED], even if improper motive is alleged." *Id.* If personnel management decisions are improperly motivated, the proper remedy is a suit against the employer for discrimination. *Id.* As stated above, "[t]he emotional distress caused by an employer's unfavorable supervisory decisions … is a normal part of the employment relationship, even when the distress results from an employer's conduct that is intentional, unfair, or outrageous." *Phillips v. Gemini Moving Specialists*, 63 Cal. App. 4th 563, 577 (1998).

Here, Defendants argue that Lewis was carrying out the directions of Consolidated to terminate Garcia, acting only as a "messenger" with the intent to benefit Consolidated. (Defendants' Opp'n Mot. Remand 4.) In her Complaint, Garcia agrees that Lewis was acting within the scope of his duty for Consolidated. (*See* Compl. ¶ 5) In fact, Lewis told Garcia that he was unsure of what actions would be taken by Consolidated or its human resource department regarding Garcia's future employment. (*Id.* ¶ 11.) Garcia fails to address this argument in her reply. (*See* Garcia Reply Mot. Remand, ECF No. 23.)

Further, Garcia's pleadings aver that the majority of the wrongful conduct was by Consolidated, not Lewis. (*See* Compl. ¶¶ 6–17, 24–30.) Consolidated is the party responsible for setting Garcia's employment standards, and the human resource department allegedly made the decision to terminate Garcia. (*Id.* ¶¶ 10–11.) Garcia acknowledges that she did, in fact, miss calls and, therefore, the purported reasons for her termination were not fabricated. (*See id.* ¶ 11.) Moreover, the majority, if not all, of Lewis's alleged misconduct relate to his efforts to discipline, and ultimately fire, Garcia. (*See id.*) Therefore, Garcia's claim for emotional distress is based solely on conduct that forms a normal part of the employment relationship. *See Langevin v. Fed. Exp. Corp.*, No. CV 14-08105 MMM (FFMx), 2015 WL 1006367, at *13 (C.D.

Cal. Mar. 6, 2015) (finding that conduct alleged by plaintiff formed "an inherent part of a typical employment relationship" where "the false write-ups, discipline, demotion, and humiliation he allegedly suffered all occurred at the jobsite and affected generally recognized aspects of the normal employment relationship").

Lastly, although Garcia argues that Lewis maliciously threatened her, the Complaint is not clear that such a threat ever took place. Garcia claims that Lewis told her "it was best for her to resign so that it would look better to future employers and that [Consolidated] would not have to explain the purported reasons for [her] termination to future prospective employers seeking a reference." (Compl. ¶ 13.) This allegation is far from the necessary conduct required to sustain a claim for IIED and falls squarely in the realm of personnel management decisions. *See Sherman v. Hertz Equip. Rental Corp.*, No. SACV 10-1540 DOC, 2001 WL 317985, at*2 (C.D. Jan. 28, 2011) (dismissing IIED claims against individual defendants with prejudice, finding "the single act of terminating an employee does not meet the standard for extreme and outrageous conduct as required to trigger liability for IIED). Even terminations for improper motive do not suffice to state a claim under this theory. *See Taylor v. FedEx Freight, Inc.*, No. 1:16-CV-0438-BAM, 2017 WL 4022757, at *10 (E.D. Cal. Sept. 12, 2017) (finding that emotional distress that stems from an employer's unfavorable supervisory decisions "is a normal part of the employment relationship" and insufficient to sustain an IIED claim, even though plaintiff was scrutinized more closely than other employees, disciplined unfairly, transferred out of state, and eventually terminated). Therefore, the allegations in the Complaint, even taken as true, do not rise to a sufficient level of indecency to state a claim for IIED. *See* Restatement (Second) of Torts § 46 (1965).

Although Garcia has failed to allege sufficient facts to support her IIED claim, the Court must consider whether, under California law, she should be given leave to amend. *See Olguin v. Int'l Paper Co.*, No. CV 16-01865-AB (Ex), 2016 WL 1643722, at *4 (C.D. Cal. Apr. 26, 2016). Courts generally allow a plaintiff to amend

11

the complaint to assert additional facts if it is possible that its deficiencies could be cured by amendment. *Id.* However, leave to amend a complaint need not be granted when the defect is not curable. *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 515 (S.D.N.Y. 1997), *aff'd*, 136 F.3d 313 (2d Cir. 1998) (dismissing plaintiff's claim where granting a leave to amend would not serve any purpose). Here, because Garcia's IIED claim is preempted by the exclusivity provision of the WCA, an amendment would serve no purpose and is unwarranted. Therefore, Garcia's IIED claim against Lewis fails as a matter of law, and Lewis cannot be held individually liable for his supervisory conduct.

### 2.   NIED

Alternatively, Garcia brings a cause of action against Lewis for NIED. (Compl. ¶¶ 28–30.) In California, NIED is not truly "an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1377 (2010). In order to state a claim for NIED, Plaintiffs must point to "negligent conduct that fundamentally caused the harm*." Hattox*, 2013 WL 314953, at *8 (quoting *Tu v. UCSD Med. Ctr.*, 201 F. Supp. 2d 1126, 1131 (S.D. Cal. 2002)). While plaintiffs may plead alternative theories, "where the conduct is intentional, it cannot be used as the basis for a [NIED] claim." *Edwards v. U.S. Fid. & Guar. Co.*, 848 F. Supp. 1460, 1466 (N.D. Cal.1994), *aff'd*, 74 F.3d 1245 (9th Cir. 1996).

Here, Garcia's NIED claim is based solely on allegations regarding the termination of her employment. (*See* Compl.) "In the context of employment decisions, courts have recognized that such decisions are inherently intentional." *U.S. ex rel. Knapp v. Calibre Sys., Inc.*, No. CV 10-4466 ODW (JCGx), 2011 WL 3204454, at *1 (C.D. Cal. July 25, 2011) (citing *Cole*, 43 Cal.3d at 160–61). However, Garcia argues that it is possible that Lewis may learn that he negligently "coerced" Garcia into signing a resignation letter and "maliciously" denied Garcia unemployment benefits. (Garcia Reply Mot. Remand 8.) The Court disagrees.

Terminating an employee or asking an employee to draft a resignation letter is inherently intentional conduct and, therefore, cannot serve as the basis for Garcia's NIED claim. *See Fragada v. United Airlines, Inc.*, No. CV 16-3914-MWF (JPRx), 2017 WL 4586933, at *9 (C.D. Cal. June 13, 2017) ("Intentional conduct, such as a termination decision, cannot logically support a claim for negligence."); *see also Semore v. Pool*, 217 Cal. App. 3d 1087, 1105 (Ct. App. 1990) ("It is clear however, that there was no duty not to discharge defendants and that any actions by the employer were intentional, not negligent.") Therefore, the Court finds that Garcia does not state a plausible claim of NIED against Lewis.

Furthermore, the Court finds that Garcia's NIED claim is also barred by the exclusivity provision of the WCA because "dismissal from employment … is considered an ordinary risk of the employment relationship. *See Adjian v. JP Morgan Chase Bank, N.A.*, No. CV 14-8445 DMG (AJWx), 2015 WL 13660480, at *9 (C.D. Cal. Oct. 9, 2015) (finding that plaintiff's NIED claim was preempted by the WCA because his emotional distress stemmed from his termination and no workplace discrimination was alleged); *Robomatic, Inc., v. Vetco Offshore*, 225 Cal. App. 3d 270, 274 (Ct. App. 1990) ("[A]n action for [NIED] resulting from employment dismissal is barred by the workers' compensation exclusivity rule.").

Therefore, this Court has diversity jurisdiction under 28 U.S.C. § 1332 because Garcia does not state plausible claims against Lewis and his citizenship may be disregarded. *See Hamilton Materials*, 494 F.3d at 1206. Accordingly, the Court **DENIES** Garcia's Motion to Remand.

### 3. Lewis's Motion to Dismiss

Finally, Lewis moves for dismissal under Rule 12(b)(6) on all claims asserted against him by Garcia. (*See* Mot. Dismiss.) As discussed above, both of Garcia's claims against Lewis fail as a matter of law because they are subject to WCA's exclusivity provision. For this reason, Garcia fails to sufficiently plead plausible claims for IIED and NIED against Lewis, and the defects in the pleadings cannot be

13

cured by amendment.  *See Greene*, 956 F. Supp. at 515 (S.D.N.Y. 1997).  The Court, therefore, **GRANTS** Lewis's Motion to Dismiss.  (ECF No. 14.)

///

///

///

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Garcia's Motion to Remand (ECF No. 18) and **GRANTS** Lewis's Motion to Dismiss for Failure to State a Claim (ECF No. 14).

**IT IS SO ORDERED.**

May 14, 2018

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

14